541 So.2d 1219 (1989)
James D. SHELBY, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1767.
District Court of Appeal of Florida, Second District.
January 27, 1989.
James S. Purdy, Sarasota, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
*1220 CAMPBELL, Chief Judge.
Appellant, James D. Shelby, raises five points in this appeal from his convictions and sentences for burglary of a dwelling, sexual battery while wearing a mask and while using or threatening to use a deadly weapon, false imprisonment and petit theft.
We find that one of those points, the trial court's refusal to allow appellant to exercise his final peremptory challenge, has sufficient merit to require us to reverse appellant's convictions and sentences and remand for a new trial. Our disposition of that issue makes all but two of appellant's other arguments moot, which we will address.
In regard to the trial court's denial of appellant's right to exercise his last peremptory challenge, the record shows that both appellant and the state had completed their voir dire examinations of the prospective jurors and both parties had indicated acceptance of the panel on the afternoon before the trial was scheduled to begin. The jury panel was not sworn at that time, but was directed to return for trial the next morning and to be sworn at that time. During voir dire, one prospective juror had indicated he had a daughter who had been molested as a child. While the juror expressed concern over his feelings about that incident, he also expressed his belief that he could be fair to appellant. The next day, prior to swearing the jury and prior to the commencement of trial, appellant attempted to exercise his one remaining peremptory challenge to excuse that juror. The trial judge denied appellant's request to exercise his last peremptory challenge.
The case law of this state and the clear language of Florida Rule of Criminal Procedure 3.310 are explicit in their teachings that the denial of appellant's right to exercise his peremptory challenge before the jury is sworn is error and requires us to reverse appellant's convictions and sentences and remand for a new trial. Gilliam v. State, 514 So.2d 1098 (Fla. 1987); Kidd v. State, 486 So.2d 41 (Fla. 2d DCA 1986); Walden v. State, 319 So.2d 51 (Fla. 1st DCA 1975), cert. denied, 330 So.2d 21 (Fla. 1976).
We next address appellant's assertion that the court should have entered a judgment of acquittal on the charge of sexual battery while using or threatening to use a deadly weapon. The victim in this case was attacked by an intruder in her apartment at approximately 5:00 a.m. The intruder grabbed the victim while she was in bed, moved the bedcovers away and started moving his hands on her body. He grabbed her arms and she struggled. When she started to scream, he put his hand over her mouth. She believed he was wearing rubber gloves. The intruder stated that he did not want to hurt her. He told her he had a gun in his pocket and she had better cooperate. She did not see a gun, feel a gun, nor did he display a gun. The victim could not identify the intruder from the sound of his voice, as he sounded as if he was disguising his voice. He handcuffed her hands behind her back and committed a sexual battery upon her. The intruder then threw the covers on top of her and did something around the dresser. He removed the handcuffs and advised her that if she told anyone of the incident he would return. After the incident, the victim found her purse on the floor. A couple of dollars and her house keys were gone.
In a later search of appellant's apartment, a number of items were recovered that linked appellant to the scene of the crime. However, neither the victim's house key nor a weapon were ever found.
The amended information charges that appellant, in the process of committing the sexual battery, "threatened to use a deadly weapon, to wit: A Gun." Section 794.011(3), Florida Statutes (1985), makes it a crime to commit a sexual battery while the perpetrator "uses or threatens to use a deadly weapon." The charge against appellant was specifically limited to "threatened to use a deadly weapon." He was not charged with using a deadly weapon. It is also significant that section 794.011(3) does not require that a threat to use a deadly weapon be accompanied by the additional element of the display of that weapon. *1221 There appear to be no cases in Florida interpreting the necessary elements of proof for "threatening to use a deadly weapon." (Here, a gun, by definition of law, is a deadly weapon. M.R.R. v. State, 411 So.2d 983 (Fla. 3d DCA 1982).)
More particularly, no cases have addressed the issue of whether a threat to use a deadly weapon can be accomplished by words alone when the weapon is unseen and never discovered. We conclude, however, that such a threat with an unseen and undiscovered deadly weapon does satisfy the requirements of section 794.011(3) when the assailant, in order to carry out his assault, informs the victim he has such a weapon under circumstances that cause the victim to have reason to believe that the assailant has the ability to carry out his threat. We do not believe that the legislature intended to require a sexual battery victim, who is verbally threatened with a gun or other deadly weapon, to demand satisfactory proof from the perpetrator of the actual existence of the weapon. There is authority for this position in other jurisdictions. State v. Henderson, 34 Wash. App. 865, 664 P.2d 1291 (1983). See also 67 Am.Jur.2d Robbery § 8 (1985); Annotation, Robbery by Means of Toy or Simulated Gun or Pistol, 81 A.L.R.3d 1006 (1977).
We therefore hold that a defendant may be convicted of sexual battery while threatening to use a deadly weapon when the defendant threatens the victim with a gun which the assailant claims to possess, but which is unseen and never discovered. The assailant who chooses to utter such a threat, under circumstances that cause a reasonable victim to believe the threat, should be held to the consequences of the manner of threat he chooses to make. We therefore conclude, even though we must reverse and remand for a new trial on other grounds, that the trial court was correct in refusing to grant appellant's motion for judgment of acquittal in the sexual battery charge.
Finally, we agree with appellant's assertion that the trial judge erred when he omitted an essential element from the instructions to the jury on the false imprisonment charge. The jury instruction delivered by the court read:
Before you can find the Defendant guilty of False Imprisonment, the State must prove the following two elements beyond a reasonable doubt:
1. Defendant forcibly, secretly or by threat, restrained Pamela Tierney against her will.
2. Defendant had no lawful authority.
Section 787.02, Florida Statutes (1985) requires, and the standard jury instruction on false imprisonment clearly delineates, a third element that distinguishes the crime of false imprisonment from the crime of kidnapping. That third element, missing from the trial court's instruction below, is that the defendant:
[A]cted for any purpose other than to:
(a) Hold for ransom or reward or as a shield or hostage.
(b) Commit or facilitate the commission of any felony.
(c) Inflict bodily harm upon or to terrorize the victim or another person.
(d) Interfere with the performance of any governmental or political function.
This third element was crucial to the facts in the case against appellant because the evidence may support a finding by the jury that the perpetrator handcuffed the victim for the purpose of facilitating the sexual battery or other felony. As such, by the clear language of section 787.02 and the standard instruction, appellant could not be guilty of false imprisonment if the only purpose of the restraint was to commit or to facilitate the commission of a felony.
We address this final point urged by appellant so that on remand and any subsequent retrial the full and correct instruction on false imprisonment will be presented to the jury.
Reversed and remanded for retrial.
HALL and THREADGILL, JJ., concur.